AO 91 (Rev. 01/09) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

District of New Jersey

United States of America
v.
Thomas Durkin
*Defendant*

Case No. 09-5537 (KMW)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of 05/01/2008 in the county of Atlantic in the ______ District of New Jersey, the defendant violated 21 U. S. C. § 846, an offense described as follows:

See Attachment A

This criminal complaint is based on these facts:

See Attachment B

☑ Continued on the attached sheet.

[signature]
*Complainant's signature*

Richard Reck, Special Agent DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12/01/2009

[signature]
*Judge's signature*

City and state: Camden, NJ

KAREN M. WILLIAMS
U.S. MAGISTRATE JUDGE
*Printed name and title*

# CONTENTS APPROVED

## UNITED STATES ATTORNEY

By:______________________________
R. STEPHEN STIGALL, AUSA

Date: 12/1/09

## Attachment A

From at least as early as in or about May, 2008 through on or about April 17, 2009, in Atlantic County, in the District of New Jersey, and elsewhere, the defendants

FREDERICK CRESS,
THOMAS KILCOURSE, and
THOMAS DURKIN

did knowingly and intentionally conspire and agree with each other, and with others, known and unknown, to distribute and possess with intent to distribute Schedule II controlled substances, including Oxycontin, Percocet, and Roxicodone, contrary to Title 21, United States Code, Section 841(a) and (b)(1)(C).

In violation of Title 21, United States Code, Section 846.

**ATTACHMENT B**

I, Richard Reck, a Special Agent with the Drug Enforcement Administration ("DEA"), have personally participated in this investigation and am aware of the facts contained herein based upon my own investigation, information provided to me by other law enforcement officers, and information supplied by a confidential source ("CS").[1] Since this Affidavit is being submitted for the limited purpose of securing criminal complaints and arrest warrants, I have not set forth every fact resulting from the investigation. Rather, I have set forth just those facts which I believe are necessary to establish probable cause to support the Complaints. Where statements of others are set forth in this Affidavit, they are set forth in substance and in part, unless otherwise noted.

1. I make this affidavit in support of an application for a Complaint charging each of defendants FREDERICK CRESS, THOMAS KILCOURSE, and THOMAS DURKIN with violating Title 21, United States Code, Section 846.

2. As set forth in detail below, I have probable cause

---

[1] The CS has proven to be credible and reliable. Both during the instant investigation and before it, the CS has provided the DEA with information regarding significant criminal conduct. The DEA independently corroborated the CS's information. In this investigation, the DEA has been able to independently corroborate the information provided by the CS through surveillance operations, witness interviews, and interviews of the defendants.

to believe that since at least May 2008, defendants FREDERICK CRESS, THOMAS KILCOURSE, and THOMAS DURKIN and others have obtained large quantities of prescription narcotics, such as Oxycontin and Percocet, among others, from Florida and illegally distributed those narcotics in Southern New Jersey. As set forth in more detail herein, over this time period, a routine trip for a member of the conspiracy involved driving to Florida or flying (often with other members of the conspiracy) out of Atlantic City International Airport ("ACY") to Fort Lauderdale-Hollywood International Airport, obtaining and filling one or more prescriptions for large quantities of various narcotics, then returning to New Jersey, following which members of the conspiracy would illegally distribute the prescription narcotics in Southern New Jersey.

3. On or about May 23, 2008, the DEA learned from the CS that defendant FREDERICK CRESS was selling prescription pills throughout the Atlantic County area. The CS explained, in substance and in part, that CRESS and/or his conspirators would travel to Florida to obtain the pills and would then have them transported back to New Jersey for distribution.

4. On or about January 29, 2009, Atlantic County, New Jersey Superior Court Judge James Isman issued a warrant to search defendant FREDERICK CRESS' residence. Law enforcement officers executed the warrant on or about February 2, 2009 and seized a white plastic bottle labeled OxyContin 30 mg and a

Fentanyl Duragesic patch.

5. During execution of the search warrant, defendant FREDERICK CRESS agreed to speak with law enforcement officials after a waiver of his Miranda rights. CRESS admitted, in substance and in part, that he obtained prescription drugs from Florida and then sold them in New Jersey. CRESS further stated that he had an addiction problem as well. CRESS also characterized himself as a drug dealer, but that he was not as big a drug dealer as the DEA believed him to be. CRESS said he wanted to cooperate with the DEA and could identify larger drug dealers than himself.

6. On or about February 18, 2009, the DEA learned that defendants FREDERICK CRESS and THOMAS DURKIN, and others, were traveling to Florida to obtain a large amount of prescription pills. The DEA further learned that the group was going to go to various pain medication locations in the Fort Lauderdale area and bring back OxyContin and other pain medications to New Jersey. The DEA also learned that CRESS was organizing and funding the trips to Florida.

7. As a result of the information set forth above, your affiant and law enforcement personnel from the New Jersey State Police interviewed defendant FREDERICK CRESS after he arrived on a flight from Florida to Atlantic City, New Jersey on February 18, 2009. CRESS gave consent to search his checked and carry-on luggage. Law enforcement seized approximately 149 Oxycodone 30mg

pills and 54 OxyContin 80mg pills from CRESS.

8. During the interview, defendant FREDERICK CRESS admitted, in substance and in part, that he and others, including defendants THOMAS KILCOURSE and THOMAS DURKIN, had been traveling from New Jersey to Florida for the purpose of purchasing prescription drugs, some of which he later sold to others in New Jersey. CRESS said that he had been traveling to Florida for approximately the past nine months and had obtained approximately 300 pills on each trip. CRESS explained that he consumed a large portion of the pills but sold approximately 150 of them per trip. CRESS further said that he had obtained approximately 2,700 pills over this nine month period. CRESS explained that he paid for his conspirators' hotel room and had even paid for DURKIN's flight on one occasion. CRESS also said he paid for the rental cars he and his conspirators used to pick up the pills in Florida. CRESS explained that DURKIN and KILCOURSE paid CRESS back for the hotel rooms and also paid for their share of the rental cars. CRESS said he accepted pills from DURKIN and KILCOURSE as payment.

9. Defendant FREDERICK CRESS further admitted, in substance and in part, that on the trip he had just taken, he had obtained approximately 180 Roxicodone 30 mg pills and 60 OxyContin 80 mg pills from a prescription written by one doctor in Florida, and 240 Roxicodone 30 mg pills from a prescription written by another doctor in Florida. CRESS explained that he

sent a large portion of the pills back to New Jersey via FedEx so that he could further distribute them. CRESS said he sent one package to D.C. - CRESS' cousin - on Cologne Avenue, Egg Harbor City, New Jersey in the name of "Thomas Kilcourse." CRESS said he sent another package to J.L. in Ventnor, New Jersey, in the name of "Thomas Durkin." CRESS also stated, in substance and in part, that he sent a third FedEx package containing Oxycodone from Florida to New Jersey under the name "Tom Kilcourse" and addressed to D.C. which was due to arrive in New Jersey on February 19, 2009. When law enforcement asked CRESS why he sent packages containing pills to New Jersey in other people's names, CRESS replied, in substance and in part, that he thought law enforcement officers were investigating him and he did not want to get caught.

10. The DEA seized from the recipients via consent the first two packages described above which defendant FREDERICK CRESS said he had sent to New Jersey from Florida. The DEA confirmed that the packages contained Oxycodone.

11. With regard to the third FedEx package to which defendant FREDERICK CRESS had admitted sending from Florida to New Jersey, law enforcement officers determined that the FedEx package (FedEx tracking number 8689 0085 8375) was sent by CRESS using the name "Tom Kilcourse" at 4218 Porter Ave, Atlantic City, NJ 08401 and addressed to D.C. at 323 S. Cologne Ave, Egg Harbor City, NJ 08715-3716. Law enforcement officers further determined

that the package had been sent on February 18, 2009 and was due to arrive February 19, 2009. Law enforcement intercepted the package at the Federal Express office in Pleasantville, New Jersey on February 19, 2009.

12. Based on the above, United States Magistrate Ann Marie Donio issued a warrant to search the FedEx package referenced in Paragraph 10 above on February 25, 2009. DEA agents executed the warrant and found Oxycodone inside the package.

13. Two days before law enforcement officers executed the above-referenced warrant to search the third FedEx package defendant FREDERICK CRESS said he had sent to New Jersey, CRESS voluntarily came to the DEA office in Northfield, New Jersey to speak with DEA agents. CRESS again admitted that he had been traveling to Florida once a month for approximately nine months beginning in the Summer of 2008 to obtain prescription pills. CRESS further said he usually obtained the pills from two doctors, whom CRESS identified. CRESS again said he consumed a large portion of the pills he obtained, but that he sold approximately 150 pills per trip. CRESS again admitted to obtaining approximately 2700 pills during the nine-month period.

14. On or about February 27, 2009, defendant THOMAS DURKIN voluntarily came to the DEA Office in Northfield, New Jersey to speak with DEA agents about the investigation. During the interview, DURKIN admitted, in substance and in part, that he had traveled to Florida with defendant FREDERICK CRESS and others to

obtain prescription pills. DURKIN said he recalled that he first made such a trip in November 2008. DURKIN admitted going to various doctors in Florida and obtaining pills. For example, DURKIN recalled obtaining a prescription for 180 Roxicodone 30 mg tablets from one doctor, and a prescription for 240 Roxicodone 30 mg and 120 Percocet 10 mg tablets from another doctor. DURKIN said he filled the prescriptions in Florida.

15. During the interview, defendant THOMAS DURKIN also said that defendant FREDERICK CRESS paid the expenses for the trips to Florida, such as the cost of rental cars, doctors' appointments, and the prescription pills themselves. DURKIN said in exchange for CRESS' payment of these expenses, DURKIN gave CRESS half the pills DURKIN obtained. Of the remaining pills, DURKIN said he kept the majority but would sometimes sell them to CRESS for $15 per pill. DURKIN also said that on the trip before law enforcement stopped CRESS at ACY, CRESS had mailed pills obtained in Florida to D.C. using DURKIN's name.

16. Defendant THOMAS DURKIN further stated that he and defendant FREDERICK CRESS also frequented New Jersey doctors to obtain prescriptions. DURKIN said CRESS paid the expenses associated with obtaining the pills and DURKIN re-paid CRESS with some of the pills DURKIN obtained.

17. In or about mid-April 2009, law enforcement officers learned that defendant THOMAS KILCOURSE and others had traveled to Florida to obtain Oxycodone.

18. On or about April 17, 2009, an agent with the DEA interviewed defendant THOMAS KILCOURSE after he arrived at ACY from Florida. During the interview, KILCOURSE admitted, in substance and in part, that he had traveled to Florida and had brought pills back with him. KILCOURSE voluntarily removed four pill bottles from a backpack he was carrying. Two of the pill bottles were empty. One pill bottle contained approximately 193 OxyContin pills colored in a light shade of blue and 24 other pills that law enforcement have not yet been able to identify as Oxycodone. Another pill bottle contained approximately 156 pills of Endocet, also a form of Oxycodone.

19. During the interview on April 17, 2009, defendant THOMAS KILCOURSE also admitted, in substance and in part, that he traveled to Florida with defendants FREDERICK CRESS and THOMAS DURKIN and others for the purpose of obtaining pills. KILCOURSE further said that he had sold pills in New Jersey he had acquired in Florida, although he refused to identify his customers. KILCOURSE also said that while he was in Florida on one of these trips, he heard that CRESS had been stopped in New Jersey by law enforcement. KILCOURSE said he therefore remained in Florida for ten days, fearing he would be arrested if he returned to New Jersey. KILCOURSE explained that he then drove back to New Jersey after the ten-day period.

20. Also during the interview, the DEA agent asked defendant THOMAS KILCOURSE about KILCOURSE's cell phone, which

KILCOURSE was carrying. KILCOURSE removed the SIM card from the phone during the course of the interview in an apparent attempt to conceal it. Based on the education, training, and experience of the agent, the agent seized the phone, the SIM card, and the pills referenced above as fruits and instrumentalities of illegal drug trafficking.

S/ Richard Reck
Richard Reck
Special Agent
Drug Enforcement Administration

Sworn to and subscribed
before me this 1st
day of December, 2009.

U.S. Magistrate Judge